IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RICHARD ELLIS** | : | **CIVIL ACTION** |
| | : | |
| v. | : | **NO. 22-5245** |
| | : | |
| **SAVE PHILLY VINE STREET, LLC, ABC COMPANIES 1-10** | : | |
| | : | |

# MEMORANDUM

**MURPHY, J.**　　　　　　　　　　　　　　　　　　　　　　　　　　　　February 7, 2024

　　　　Save Philly Vine Street has moved to dismiss a complaint brought by Richard Ellis, one of its former store managers. Mr. Ellis alleges that Save Philly fired him because it thought he would file a workers' compensation claim after injuring his foot. Mr. Ellis also claims that Save Philly discriminated against him because of his race.

　　　　We heard oral argument on Save Philly's motion and held that Mr. Ellis's federal race discrimination claim may proceed to discovery. But we asked for more briefing to help decide whether Mr. Ellis could state a wrongful discharge claim under Pennsylvania law. More specifically, we asked Mr. Ellis to give us his best allegations and case law that plausibly demonstrate that he engaged in a "protected activity" — a necessary component of a wrongful discharge cause of action.

　　　　Despite the extra chance, Mr. Ellis failed to plausibly allege that he engaged in a protected activity. The allegations do not say that Mr. Ellis ever filed a workers' compensation claim or expressed to Save Philly an intent to file after injuring his foot. Mr. Ellis relies only on Save Philly's apparent knowledge of his prior workers' compensation claim history to suggest that it expected he would file again. But knowledge of an employee's prior workers' compensation history is different than an employee expressing an intention to file a present

claim. Nor is an employer's belief that an employee might file a workers' compensation claim enough to state a claim.

Therefore, we must grant in part Save Philly's motion to dismiss with prejudice and dismiss the wrongful discharge claim.

I.     **Factual Allegations**[1]

Save Philly Vine Street hired Mr. Ellis to work as a store manager. *See* DI 47-1 ¶ 7. Mr. Ellis had prior work experience with Save-A-Lot Stores. *Id.* ¶ 8; *see also id.* ¶ 37.[2] Save Philly knew Mr. Ellis from his prior work and also "knew about his workplace litigation." *Id.* ¶ 9; *see id.* ¶¶ 10-11. Mr. Ellis told Save Philly's owner and district manager that he could work at Save Philly "despite his workers['] compensation litigation." *Id.* ¶ 13.

One day, while working, a soda rack fell on Mr. Ellis's foot. *Id.* ¶ 15. He reported the accident, filed an incident report, and informed Save Philly's district manager. *Id.* ¶¶ 15-16. He started going to the hospital to treat his foot issues "[s]hortly thereafter." *Id.* ¶ 18. But Mr. Ellis's foot problems "did not have anything to do with his work injury." *Id.* ¶ 20.

---

[1] After oral argument on Save Philly's motion, we gave Mr. Ellis the opportunity to "propose[] additional allegations tending to support his wrongful termination theory." DI 46 ¶ 2. This could have been handled formally with an amended complaint and so forth, but it was more efficient to see his "best stuff" and decide from there. Thus, our factual allegations section uses the facts as set forth in Mr. Ellis's supplemental filing, which takes the form of a proposed amendment to the complaint. *See* DI 47-1.
   And we will focus on only the allegations relevant to Mr. Ellis's wrongful discharge claim because we denied Save Philly's motion to dismiss with respect to his race discrimination claim.

[2] The relationship between Save-A-Lot Stores and Save Philly Vine Street is unclear from Mr. Ellis's proposed second amended complaint; he alleges that "the Save-A-Lot corporation" did not own Save Philly Vine Street. *Id.* ¶ 12. And Mr. Ellis appears to allege that Save Philly Vine Street is a "branch" of Save-A-Lot stores. *See id.* ¶¶ 11-12.

The district manager that Mr. Ellis told about his foot injury was the same manager who knew about Mr. Ellis's workers' compensation litigation history. *See id.* ¶¶ 13, 17. Anticipating that Mr. Ellis would file a workers' compensation claim because of his foot injury, and "because of his past litigation," *id.* ¶ 20, the district manager terminated him, *see id.* ¶¶ 19, 22-23, 27-29.[3] So, Mr. Ellis sued Save Philly. *See* DI 1.[4]

## II. Save Philly's Motion to Dismiss

Save Philly argues that Mr. Ellis's allegations fail to plausibly allege a wrongful discharge claim under Pennsylvania law. *See* DI 31-1 at 7-12.[5] Specifically, Save Philly argues that Mr. Ellis did not engage in a "protected activity" sufficient to state a prima facie wrongful discharge claim. *Id.* at 8-9. Save Philly further maintains that Mr. Ellis fails to plausibly allege a causal connection "between any work-related injury . . . and the termination decision." *Id.* at 11. The only evidence of a connection, according to Save Philly, is that "the former preceded the latter." *Id.*

Mr. Ellis responds that Save Philly "had knowledge of" his prior workers' compensation litigation and — with that knowledge — terminated him because it thought he would claim workers' compensation. *See* DI 35 at 7 (ECF). Mr. Ellis argues that an adverse ruling on his

---

[3] Mr. Ellis also claims that Save Philly terminated him because of his race, *see id.* ¶¶ 33-46, but we already decided that his claim should proceed to discovery, *see* DI 46.

[4] Mr. Ellis originally sued Save A Lot. *See* DI 1. He purportedly served Save A Lot, *see* DI 5, but Save A Lot did not respond to his complaint. The clerk of court entered default against Save A Lot, but after Mr. Ellis moved for default judgment, *see* DI 9, counsel for Save Philly appeared, *see* DI 13, 14. Counsel said that Mr. Ellis "erroneously named" Save A Lot as the defendant. *See id.*

[5] We denied Save Philly's first motion to dismiss as moot because Mr. Ellis cross-moved to amend his complaint. *See* DI 27, 29.

claim will "interfere with Pennsylvania public policy," which creates an exception from Pennsylvania's at-will employment doctrine for these types of claims. *Id.* at 7.[6]

We have jurisdiction, *see* 28 U.S.C. § 1367, and Save Philly's motion is ripe for disposition. For the reasons explained below, we grant Save Philly's motion with prejudice with respect to Mr. Ellis's wrongful discharge cause of action.

### III.     Standard of Review

We use the Third Circuit's three-step test to review motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). "First, [we] must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Santiago v. Warminster Township*, 629 F.3d 121, 130 (3d Cir. 2010) (second alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). "[S]econd, we will identify allegations that are conclusory and therefore not assumed to be true." *Sweda v. Univ. of Pa.*, 923 F.3d 320, 326 (3d Cir. 2019); *see James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012) ("[W]e disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements."). Third, and "finally, 'when there are well-pleaded allegations,' we 'assume their veracity,' in addition to assuming the veracity of 'all reasonable inferences that can be drawn from' those allegations, and, construing the allegations and reasonable inferences 'in a light most favorable to the non-movant,' we determine whether they

---

[6] Mr. Ellis did not cite supplemental legal authority for his wrongful discharge claim when we gave him the additional chance. *See* DI 47. He only attached a proposed second amended complaint and argued the allegations demonstrate that Save Philly "suspected that he" engaged in a protected activity. *Id.*
   Save Philly responded that Mr. Ellis "has not cited a single case" supporting his interpretation of his wrongful discharge claim. DI 48 at 4. Similar to its motion and reply, Save Philly relies on the standard set forth in the Pennsylvania Supreme Court's decision in *Shick v. Shirey*, 716 A.2d 1231 (Pa. 1998) to argue that Mr. Ellis did not engage in a protected activity. *See id.* at 5. Save Philly also cites to the subcommittee notes to Pennsylvania's civil jury instructions, stating that "[t]he receipt or pursuit of workers' compensation must be the factual cause in the motivation to terminate the employee in order to be actionable." *Id.* at 5 (quoting Pa. SSJI (Civ.) 21.110).

'plausibly give rise to an entitlement to relief.'" *Oakwood Laboratories LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (cleaned up).

IV.     **Analysis**

Mr. Ellis does not state a plausible wrongful discharge claim because he failed to allege that he engaged in a protected activity under Pennsylvania law.

Under Pennsylvania law, "[g]enerally, an employer 'may discharge an employee with or without cause, at pleasure, unless restrained by some contract.'" *Shick v. Shirey*, 716 A.2d 1231, 1233 (Pa. 1998) (quoting *Henry v. Pittsburgh & Lake Erie R.R. Co.*, 21 A. 157 (Pa. 1891)). So, "there is no common law cause of action against an employer for termination of an at-will employee." *Id.* at 1234. But "while the general rule is that at-will employees may be terminated for any or no reason, courts have forbidden the firing of at-will employees when doing so would offend Pennsylvania's public policy." *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 111 (3d Cir. 2003) (citing *Geary v. U.S. Steel*, 319 A.2d 174, 185 (Pa. 1974)). "Pennsylvania courts have construed the public policy exception to at-will employment narrowly, lest the exception swallow the general rule." *Id.*

One exception to the general rule is terminating an employee in retaliation for filing a workers' compensation claim. *Shick*, 716 A.2d at 603. The Pennsylvania Supreme Court held in *Shick* that "an at-will employee who alleges retaliatory discharge for the filing of a workers' compensation claim . . . state[s] a cause of action." *Id.* at 1232. The employee in *Shick* injured his knee at work, pursued and received workers' compensation benefits, and returned to work — only to be fired "due to his pursuit of his workers' compensation claim." *Id.* The injured employee argued that public policy dictates recognition of his claim; otherwise, "an employee who sustains a work-related injury [is] in the untenable position of choosing between exercising

5

his legal rights and seeking compensation for his injury under the [Workers' Compensation] Act." *Id.* at 1233.  The supreme court observed that the compromise between employers and employees through enforcement of the Workers' Compensation Act "would be disrupted if the employer could terminate an employee for filing a workers' compensation claim." *Id.* at 1237. Likening Pennsylvania's Workers' Compensation Act to Indiana's, the court said that an "employee must be able to exercise his right [to obtain workers' compensation] in an unfettered fashion," and "[i]f employers are permitted to penalize employees for filing workmen's compensation claims, a most important public policy will be undermined." *Id.* (quoting *Frampton v. Cent. Ind. Gas Co.*, 397 N.E.2d 425, 427 (Ind. 1973)).  Therefore, the injured worker stated a plausible cause of action.  *Id.*

Using *Shick*, the Third Circuit has held that "an employee must establish" three elements for a wrongful discharge claim based on pursuing workers' compensation benefits:

(1) that he engaged in protected activity;

(2) that he suffered an adverse employment action either after or contemporaneous with the protected activity; and

(3) that there is a causal connection between his protected activity and the employer's adverse action.

*Dunsmuir v. May Dep't Stores Co.*, 120 F. App'x 927, 929 (3d Cir. 2005).  The three elements, according to the Third Circuit, are comparable to Title VII wrongful discharge claims.  *Id.*  And Title VII's "familiar *McDonnell Douglas* framework" applies for Pennsylvania wrongful discharge claims.  *Frymoyer v. E. Penn Mfg. Co., Inc.*, 757 F. App'x 97, 100 (3d Cir. 2018) (explaining burden-shifting after prima facie demonstration).

Filing a workers' compensation claim is a protected activity, *see, e.g.*, *Gorman v. Acteon Networks, LLC*, 2021 WL 2156359, at *8 (E.D. Pa. May 26, 2021), but "filing a claim is [not]

6

the only conduct that constitutes protected activity," *Smith v. R.R. Donnelley & Sons, Co.*, 2011 WL 4346340, at *6 (E.D. Pa. Sept. 16, 2011). Rather, "[w]rongful discharge claims based on filing workers' compensation claims require both (1) reporting the injury to the employer and (2) 'express[ing] [an] intent' to the employer to file a workers' compensation claim." *Larochelle v. Wilmac Corp.*, 769 F. App'x 57, 63 (3d Cir. 2019) (second and third alterations in original) (quoting *Smith*, 2011 WL 4346340, at *5); *see also Smith*, 2011 WL 4346340, at *6 ("[I]t is the reporting of the work-related injury *in conjunction with the employee's expression of intent to file a workers compensation claim* that is enough to trigger the protection afforded by the [Workers' Compensation] Act." (emphasis added)).

By requiring that an employee must express her intent, the Third Circuit in *Larochelle* applied what the district court characterized as "the more lenient . . . approach" — rather than requiring that a claim actually be filed. *Larochelle v. Wilmac Corp.*, 210 F. Supp. 3d 658, 716-17 (E.D. Pa. 2016), *aff'd*, 769 F. App'x 57 (3d Cir. 2019). The Third Circuit held that "the mere fact that [an employee] filled out an incident report stating" her work injury "does not mean that she expressed to [her employer] her intent to file a workers' compensation claim." *Larochelle*, 769 F. App'x at 63; *see also Bamat v. Glenn O. Hawbaker, Inc.*, 2019 WL 3387660, at *2 (M.D. Pa. July 26, 2019) (rejecting "so-called 'perception theory' of workers' compensation retaliation," which would permit a "workers' compensation retaliation claim" that "rel[ies] on facts as to what his employer believed, rather than stating facts as to what the plaintiff expressed"); *Morgan v. Allison Crane & Rigging LLC*, 2023 WL 2991656, at *8 (M.D. Pa. Apr. 18, 2023) (dismissing wrongful discharge claim where employee could not "establish that he ever informed anyone . . . of a desire to file a workers' compensation claim," but only that he "researched how to open a workers' compensation claim").

7

Here, Mr. Ellis's allegations are missing that protected activity. He does not allege that he ever filed a workers' compensation claim, and Save Philly's "knowledge of his history of workers' compensation litigation" does not mean that he expressed an intent to file another one after injuring his foot. DI 35 at 7 (ECF).[7] Even affording Mr. Ellis all reasonable inferences — as we must — his complaint does nothing more than assert that Save Philly assumed that he would file a workers' compensation claim based on his prior exercising of workers' compensation rights. *See* DI 47-1 ¶ 22.

We think his allegations fit neatly into the "perception theory" of wrongful discharge claims that courts — including the Third Circuit — have steered clear of. *See Larochelle*, 769 F. App'x at 63. Like the employee in *Larochelle*, Mr. Ellis's filing of an incident report does not equate to expressing an intention to file a workers' compensation claim. What matters is what Mr. Ellis expressed. And at most we can say that Mr. Ellis expressed his *past* workers' compensation litigation, as well as his foot injury. *See* DI 47-1 ¶¶ 13, 19. The missing piece is any expression of intent to file a workers' compensation claim based on the injury at issue.

We are reluctant to further expand the definition of engaging in a protected activity when the Pennsylvania Supreme Court has stressed that exceptions to Pennsylvania's at-will employment doctrine are narrow. *See Rothrock v. Rothrock Motor Sales, Inc.*, 883 A.2d 511, 516 (Pa. 2005) ("[E]xceptions to at-will termination should be few and carefully sculpted so as to

---

[7] Worth noting, Mr. Ellis himself alleges that his "medical issues with his foot did not have anything to do with his work injury." DI 47-1 ¶ 20; *cf. Shick*, 716 A.2d at 1237 ("The Workers' Compensation Act, while a definitive pronouncement of the law governing remedies *for work-related injuries*, is not legislation governing at-will employment." (emphasis added)).

not erode an employer's inherent right to operate its business as it chooses."). Therefore, we hold that Mr. Ellis has failed to state a plausible wrongful discharge claim.[8]

## V. Conclusion

Because the allegations do not plausibly show that Mr. Ellis engaged in a protected activity, he has failed to state a prima facie wrongful discharge cause of action. We grant Save Philly's motion to dismiss Mr. Ellis's wrongful discharge claim with prejudice and dismiss Mr. Ellis's claim.

---

[8] Because Mr. Ellis does not allege that he engaged in a protected activity, we need not address whether he sufficiently alleged a causal connection between a protected activity and adverse action. *See* DI 31-1 at 10-12.